972 So.2d 970 (2007)
Armand RAPPAPORT, etc., Appellant,
v.
PROGRESSIVE EXPRESS INSURANCE COMPANY, Appellee.
No. 3D06-778.
District Court of Appeal of Florida, Third District.
December 26, 2007.
Rehearing Denied February 7, 2008.
Chasin & Stinson; Philip D. Parrish, Miami, for appellant.
Houck Anderson and Valerie A. Dondero, Miami, for appellee.
Before COPE and SALTER, JJ., and FLETCHER, Senior Judge.
SALTER, J.
Armand Rappaport, personal representative of the estate of a bus passenger who died following an injury aboard the bus, appeals a final summary judgment in favor of Progressive Express Insurance Company ("Progressive"). The trial court found that there was no genuine issue of material fact that KSA Tours, owner of the bus, had "loaned its bus to J.J. USA Bus Tours, Inc. without notice to the insurer, both as to the entity and driver," with the result that there was no coverage applicable to the bus or accident.
We review the summary judgment de novo, viewing all of the evidence in the light most favorable to the non-moving party. Sierra v. Shevin, 767 So.2d 524 (Fla. 3d DCA 2000).
We affirm, finding that KSA Tours did not disclose to Progressive as part of its application that KSA Tours loaned its vehicles, or would loan its vehicles, to uninsured corporations for the transportation of tourists.[*] Because the appellant did *971 not file opposing "summary judgment evidence" as provided by Florida. Rule of Civil Procedure 1.510(c) on the insurer's sworn contentions that the undisclosed types of business were material and unacceptable underwriting risks, the trial court correctly granted the motion for final summary judgment. See § 627.409, Fla. Stat. (2003); Motors Ins. Corp. v. Marino, 623 So.2d 814 (Fla. 3d DCA 1993).
Affirmed.
FLETCHER, Senior Judge, concurs.
COPE, J. (dissenting).
The reasons stated by the trial court for the summary judgment are legally insufficient. We should remand the matter for trial.
Since this is a summary judgment proceeding, the testimony and factual inferences must be taken in the light most favorable to the nonmoving party. Read in that light, KSA Tours, Inc. is a local company which transports passengers between airports and hotels, and the Port of Miami. KSA also operates some tours.
On March 19, 2003, the owner, Mr. Arregoces, met with an insurance agent in the office of InsureBrite, an authorized agent for appellee Progressive Express Insurance Company. The purpose of the meeting was to obtain motor vehicle insurance for the vans owned by KSA. Mr. Arregoces explained KSA's business to InsureBrite. InsureBrite submitted the application via computer to Progressive and coverage was immediately bound.
As of March 19, KSA conducted its business by using vans and did not own a bus. Several weeks later, on April 3, KSA purchased a bus. Mr. Arregoces testified that he called InsureBrite to advise them of the purchase. InsureBrite requested the registration and Vehicle Identification Number. Mr. Arregoces also provided Insure-Brite with the name and driver's license of the person who would be driving the bus.
Meanwhile, apparently alerted by KSA's name, Progressive made further inquiries about the nature of KSA's business. Al though InsureBrite believed that Progressive wrote insurance for this type of business, in reality Progressive did not issue insurance for the carrying of passengers for hire. On April 4the day after the bus purchaseProgressive sent out a notice of cancellation, to take effect May 19, 2003.
On May 21, 2003, the insured bus was transporting a group of condominium residents to an entertainment event, when it was involved in an accident. An elderly passenger was injured. The passenger eventually died and her estate brought a wrongful death action.[1] This declaratory judgment proceeding followed, to determine whether Progressive was providing motor vehicle insurance to KSA on the date of the accident.
Progressive first moved for summary judgment on the theory that the policy had been cancelled on May 19, two days before the accident. Unfortunately, when. Progressive sent out the notice of cancellation it utilized the statutory procedure for cancellation of insurance on ordinary passenger vehicles. See § 627.728, Fla. Stat. (2003). Progressive neglected to use the more specific cancellation provision for commercial vehicles. See id. § 320.02(5)(e). Furthermore, there was also testimony that after Progressive sent out the cancellation notice, InsureBrite advised KSA that there had been a misunderstanding *972 and that the insurance remained in force. The trial court denied Progressive's summary, judgment motion which contended that the policy had been canceled.
Progressive next moved for summary judgment on the theory that KSA had made a material misstatement in its application for insurance. See id. § 627.409. Progressive argued, as stated in the majority opinion, that KSA had loaned the bus to another entity, J.J. USA Bus Tours, Inc., without notice to Progressive both as to the entity and the driver.
However, as already stated, this is a summary judgment proceeding in which the record must be read in the light most favorable to the nonmoving party, not Progressive. Mr. Arregoces testified that he did notify InsureBrite, which was Progressive's agent, about the acquisition of the bus and the identity of the individual who would be driving it.
More to the point, Progressive is seeking to avoid coverage in this case on the basis of section 627.409, Florida Statutes. Subsection (1) applies to misrepresentations in an application for an insurance policy. It is impossible that there was any misrepresentation or omission in KSA's application because at the time of the application on March 19, KSA did not own any bus. It only owned vans. It did not buy the bus until three weeks after the effective date of the insurance policy.
Thus, Progressive has the time sequence completely backwards. The sequence was: (1) KSA submits application on March 19; (2) coverage is bound on March 19; (3) three weeks later, KSA buys bus; and (4) KSA notifies InsureBrite (and thereby, Progressive) about the bus purchase and bus driver. Obviously there could be no misrepresentation or omission about the bus at the time of the application on March 19, because KSA did not even own the bus at the time of the application. Therefore section 627.409, Florida Statutes (2003), has no application to this case.
The correct question to ask is whether there was any provision in Progressive's insurance policy which prohibited KSA from buying and operating a bus. At oral argument we were told that there is no such limitation or exclusion.
Progressive seeks to make much of the fact that the actual tour operator on the day of the accident was J.J. USA Bus Tours, Inc. That is a red herring. J.J. was an entity formed by Mr. Arregoces for the purpose of carrying on what might best be described as a joint venture between himself and the bus driver, Mr. Maia. The terms of the venture were that Mr. Arregoces would provide the bus and Mr. Maia would drive it. The profits, if any, were to be divided. In essence, KSA loaned the bus to the venture when tours were booked. Since there was nothing in the insurance policy which prohibited this, it follows that the insurance on the bus remained in force. Absent an applicable policy exclusion (and none exists here), there is no rule that loaning an insured motor vehicle to someone else causes termination of the insurance coverage because the borrower does not have its own insurance policy.
Reading the record in the required light, there was no material misrepresentation in the insurance application in this case. That being so, the summary judgment should be reversed and the cause remanded for further proceedings.
NOTES
[*] The dissent focuses on the time sequence of application, purchase of the bus involved in the accident, and KSA Tours' alleged verbal notification regarding, the new bus and additional driver. Respectfully, that is not the issue. Insurers underwrite and issue policies based on accurate disclosures by prospective insureds on their applications, not on lines and types of business that materially change before the policy is even issued. On this record, Mr. Arregoces never intimated to Progressive or InsureBrite that KSA Tours might also rent vehicles to separate (and uninsured) companies. In addition, he filed no affidavit, deposition excerpt, or other sufficient evidence to contradict Progressive's affidavit and evidence on that dispositive point. Had J.J. USA Pus Tours been a co-applicant, or had Mr. Arregoces accurately disclosed KSA Tours' business with USA Bus Tours, this would be a different case.
[1] Appellant Armand Rappaport is the personal representative and plaintiff in the wrongful death action.