Gary C. PAJCIC, as Trustee of The
Stephen J. Pajcic, III Irrevocable
Trust, Plaintiff,

v.

AMERICAN GENERAL LIFE
INSURANCE COMPANY,
Defendant.

No. 3:05 CV 324 J 20MCR.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 6, 2006.

Gary J. Guzzi and Mark S. Shapiro,
Akerman Senterfitt, Miami, FL, for the
defendant.

Charles P. Pillans, III, Bedell, Dittmar
et al., Jacksonville, FL, for the plaintiff.

## ORDER

SCHLESINGER, District Judge.

Before the Court is Defendant American
General Life Insurance Company's
("America General") Motion for Summary
Judgment as to Count II. (Doc. No. 18,
filed January 20, 2006). Plaintiff opposes
this Motion. (Doc. No. 21, filed February
6, 2006).

## I. Factual Background

The above captioned case involves a dis-
pute over the termination of a life insur-
ance policy. On July 24, 2001 Old Line
Life Insurance Company, which subse-
quently merged with Defendant American
General, issued a renewable term life in-
surance policy on the life of Stephen J.
Pajcic, III, naming the Stephen J. Pajcic,
III Irrevocable Trust as the policy owner
and beneficiary. (Complaint at ¶ 4).

The premiums on the policy were to be
paid in annual installments of $11,225.00
on July 24 of each year. (Ex. B to Com-
plaint). While the terms of the policy
provided that any premiums not paid by

the July 24 due date would be in default, the policy provided for a thirty-one (31) day grace period within which the policy would stay in force. *Id.* If, however, the insured had not paid the annual premium at the expiration of the grace period, then the "insurance will end and [the] policy will lapse." *Id.*

The annual premium payments were timely paid in 2002 and 2003. In 2004, however, no premium payment was received by the July 24 deadline or during the subsequent grace period. (Complaint at ¶ 8; Doc. No. 18 at p. 3). On September 22, 2004 Defendant sent Plaintiff a written notice that the policy was terminated due to Plaintiff's failure to timely pay the premium. (Doc. No. 18 at p. 53). The notice also encouraged Plaintiff to contact Defendant regarding information on reinstating the policy. More than two months later, on November 30, 2004, Plaintiff mailed a check for the premium with a letter stating that he had never received a notice that the premium was due. (Ex. D to Complaint). The check and letter were received by Defendant on December 1, 2004.

Thereafter, Defendant deposited the check into an internal "suspense account." On December 8, 2004, Defendant wrote Plaintiff a letter acknowledging that the premium check had been received, but informing Plaintiff that Defendant was "unable to apply the payment to [Plaintiff's] contract as it was received after the end of the grace period." (Doc. No. 18 at p. 55). Defendant went on to explain the process Plaintiff needed to undergo to reinstate the policy. Specifically, Defendant informed Plaintiff:

> To consider this contract fo reinstatement, please complete, date, and sign the enclosed Application. The insured and owner, if different, must sign the form. Please return the form to our Service Center within 21 days of the date of this letter. Once all requirements have been received, your application will be reviewed. If approved, your valuable coverage will be restored to an active status. *Id.*

In January of 2005, because Defendant had not received from Plaintiff an application for reinstatement of the policy, Defendant attempted to call Plaintiff to discuss the matter, but could not get in touch with Plaintiff. (Doc. No. 18 at p. 5). Having heard nothing from Plaintiff regarding reinstatement of the policy, on February 11, 2005, Defendant notified Plaintiff that it was closing the file and would issue a refund check for Plaintiff's November 2004 attempted payment, which was still being held in the suspense account. Plaintiff did not accept the check and returned it to Defendant pending this litigation.

Plaintiff filed suit against Defendant claiming: (1) in Count I, that neither Plaintiff nor the second addressee received a 2004 premium notice or a past due notice; and (2) in Count II, that Defendant waived its right to claim the policy had lapsed by accepting and depositing Plaintiff's check into a suspense account.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When a moving party has discharged its burden, the nonmoving party must then "go beyond the plead-

ings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the Court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### III. Discussion

■ The issue before the Court is limited to whether Defendant has waived its right to claim that the insurance policy has lapsed. Under Florida law, waiver is the voluntary and intentional relinquishment or abandonment of a known and existing right or privilege which, except for the waiver, the party would have enjoyed. *Raymond James Financial Serv., Inc.v. Saldukas,* 896 So.2d 707, 711 (Fla.2005). Waiver can be established through express language or inferred by actions or conduct demonstrating an intent to relinquish one's rights.

■ In the insurance context, Florida courts look to whether an insurer's acceptance of a late payment was unconditional, which would constitute waiver, or whether the acceptance was conditioned on the performance of something else by the insured or the insurer, which would not constitute waiver. *See e.g., Mixson v. Allstate Ins. Co.,* 388 So.2d 608, 609 (Fla. 3d DCA 1980) (unconditional acceptance of past-due premium payment waived insurer's right to claim policy lapsed); *Meeks v. State Farm Mut. Auto. Ins. Co.,* 460 F.2d 776, 778 (5th Cir.1972) (unconditional acceptance and retention of delinquent premium payment is waiver of right to cancel policy or to refuse reinstatement); *WJA Realty Ltd. Partnership v. Employee Ben., Claims, Inc.,* 488 So.2d 121, 122 (Fla. 3d DCA 1986) (acceptance of past-due premium payment was not unconditional when insurer returned the payment to insured after failure to complete necessary paperwork); *Travelers Indem. Co. of Rhode Island v. Mirlenbrink,* 345 So.2d 417, 419 (Fla. 2d DCA 1977) (insurer had not waived right to deny coverage by temporarily accepting late payment when insurer had not properly renewed policy). In other words, while an insurer cannot permanently retain the benefits of a late pre-

mium payment and still deny coverage to the insured, the temporary acceptance of a payment conditioned on the insured taking steps to perfect the policy does not necessarily constitute the knowing and voluntary abandonment of the insurer's right to claim the policy's coverage has terminated. Generally, the existence or absence of waiver is a question of fact to be answered by the jury. *Anthony v. Gary J. Rotella & Assoc., P.A.*, 906 So.2d 1205, 1208 (Fla. 4th DCA 2005). However, if based on the facts surrounding a claimed waiver, a reasonable person could draw only one conclusion from those circumstances, then the existence or absence of waiver is a question of law for the Court.

■ In the present case, the Court concludes that, as a matter of law, Defendant's conduct did not effectuate a waiver. Significantly, it is apparent that Plaintiff was on notice that the policy had terminated and that affirmative steps needed to be taken to reinstate the policy. First, the plain language of the insurance contract which Plaintiff signed states that "[i]f the premium is not paid before the end of the grace period, insurance will end and the policy will lapse." (Ex. B to Complaint). Second, Plaintiff was notified in September of 2004 that the policy had terminated and that Plaintiff could seek to reinstate it. (Doc. No. 18 at p. 53). Then again, more than two months later when Plaintiff mailed the past-due payment, Defendant immediately responded and informed Plaintiff that the payment would not be credited to the lapsed policy and that Plaintiff must seek to reinstate the policy to regain coverage. (Doc. No. 18 at p. 55). As Plaintiff was undoubtedly on notice that Defendant considered the policy to be terminated and that steps other than the late payment of a premium were required to reinstate the policy, Defendant's temporary retention of Plaintiff's premium payment cannot be considered an unconditional acceptance of that payment.

Moreover, the deposit of Plaintiff's check into Defendant's suspense account does not change the analysis or the result. Plaintiff argues that Defendant's "suspense account" is merely an internal bookkeeping entry to keep track of funds deposited into Defendant's general depository account. For this reason, contends Plaintiff, Defendant actually accepted the payment and has waived any argument to the contrary. The Court disagrees. Irrespective of whether the suspense account was an internal notation or a separate bank or escrow account, the function of the suspense account is to separate and identify funds while additional actions by the insured are undertaken or while additional processing by the insurer takes place. In fact, one of the reasons suspense accounts are created is so an insurer does not have to unconditionally accept a past-due premium, thereby waiving any claim that the policy lapsed, but instead can temporarily retain the payment while investigating the status of the policy. Nearly every court that has addressed this issue has held that an insurer's deposit of funds into a suspense account alone does not constitute an unconditional acceptance of the payment so as to effectuate a waiver. *See Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 902 (10th Cir.1977) (deposit of late payment into suspense account, alone, does not effect reinstatement of policy when insured was on notice of the need to submit additional evidence of insurability); *Security Life Ins. Co. v. Seeber*, 41 F.2d 600, 601 (7th Cir.1930) (acceptance and conversion into cash of insured's late payment is conditional acceptance and does not constitute waiver); *Hanson v. Cincinnati Life Ins. Co.*, 571 N.W.2d 363, 368 (N.D.1997) (placement of check in suspense account pending reinstatement of the policy does not constitute waiver if acceptance is clearly conditional); *Crum v. Prudential Ins. Co. of America*, 356 F.Supp. 1054, 1057

(D.C.Miss.1973) (acceptance of insured's past-due check was clearly conditional and was not waiver); *In re Meinke, Peterson & Damer, P.C.,* 44 B.R. 105, 110 (Bkrtcy. Tex.1984) (conditional acceptance by placing past-due funds in suspense account does not have effect of waiving the lapse of policy); *but see Mardirosian v. Lincoln Nat. Life Ins. Co.,* 739 F.2d 474, 478 (9th Cir.1984) (deposit into suspense account instead of general depository account is of no legal significance). Such a finding is even more appropriate in the present case when Defendant refunded the past-due payment in full upon failure of the condition to its acceptance, namely Plaintiff seeking reinstatement of the policy.

The Court does note that Defendant could have notified Plaintiff that the payment was being held in a suspense account and that the money would be refunded to Plaintiff if he did not seek to reinstate the policy. Even in the absence of such an explicit explanation, Plaintiff was aware that the payment was not being credited to the policy and that he had to do something if he wanted life insurance coverage to be reinstated. In these circumstances, Defendant's acceptance of the past-due premium was clearly conditional and Defendant has not waived its right to claim that Plaintiff's policy lapsed.

This decision offers no analysis or opinion as to whether Plaintiff received proper notice that the annual premium was due either before the July 24, 2004 due date or before expiration of the grace period. That issue will be determined at trial. But as to the present issue before the Court, Defendant has not waived its right to claim that Plaintiff's policy lapsed and thus, Defendant's Motion for Partial Summary Judgment (Doc. No. 18) is **GRANTED**. Count II of Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**.