WARNER, J.
 

 The trial court entered a final summary judgment in a dispute between a landlord and its tenant, concluding that the tenant breached the lease by failing to add the landlord as an additional insured on the tenant’s insurance policy. This precluded the landlord from obtaining compensation when the building burned down. The court rejected the tenant’s claim that the provision of the contract was waived by the landlord’s agent. We reverse, as material issues of fact remain on the issue of waiver.
 

 
 *1087
 
 Husky Rose and its principal shareholder, Daniel Eremian, entered into a lease agreement with landlord James L. Case, d/b/a Trail Plaza Shopping Center, for restaurant space in the landlord’s building. The restaurant ran successfully in the space for the duration of the lease. When the lease came up for renewal, the parties negotiated over new terms. The final renewal lease contained a new provision requiring the tenant to maintain fire insurance with the landlord as an insured under the policy. Specifically, section 6.02 of the lease provided: “The Tenant shall at all times maintain fire insurance with extended coverage in the name of the Landlord and the Tenant, in an amount appropriate to cover the cost of replacement of all alterations, decorations, additions, or improvements in the event of fire or extended coverage loss.” Husky Rose signed the lease containing that provision, and the lease was guaranteed by Eremian. The new lease went into effect on June 1, 2003.
 

 At the effective date of the new lease Husky Rose was insured under a policy with a renewal date of August 25, 2003. According to Eremian’s affidavit, the landlord’s property manager, Harry Ginsburg, agreed that Husky Rose did not have to add the landlord to the policy until it came up for renewal. The landlord was not added to the policy.
 

 Unfortunately, on July 14, 2003, the restaurant was completely destroyed by fire. Eremian testified that after the fire the parties proceeded as though no breach of the lease had occurred, and Eremian continued to meet his other obligations under the lease. The tenant recovered $494,000 from its insurance policy. The landlord received nothing from the tenant’s insurance policy, but did receive some money from the landlord’s own policy.
 

 The landlord filed suit against Husky Rose for breach of the agreement to provide insurance coverage and against Ere-mian on his guarantee. The landlord subsequently assigned his claim for breach of contract to his insurance company, Allstate. The tenant then filed a counterclaim against the landlord for breach of the provision of the lease requiring the landlord to rebuild the premises after their destruction in the fire. In response, the landlord affirmatively alleged that the tenant had first breached the lease by failing to add him as an additional insured on the policy, relieving the landlord of further obligations under the lease. Ultimately, through summary judgment the trial court ruled that the tenant breached the lease first. This breach discharged the landlord from further obligations under the lease. Therefore, the court entered summary final judgment in favor of the landlord. It also granted summary judgment to Allstate on the assigned claim, but that claim is not yet final because damages have not been determined. The tenant appeals the final summary judgment in favor of the landlord.
 

 As we stated in
 
 Craven v. TRG-Boynton Beach, Ltd.,
 
 925 So.2d 476, 479-80 (Fla. 4th DCA 2006):
 

 The standard of review of the entry of summary judgment is
 
 de novo ...
 
 The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact, and the court must draw every possible inference in favor of the party against whom a summary judgment is sought.
 

 (citations omitted). The trial court properly enters a summary judgment where “the facts are so crystallized that nothing remains but questions of law.”
 
 Id.
 
 at 480.
 

 The tenant concedes that it failed to add the landlord’s name to the fire insurance policy, but it argues that a question of fact remains regarding waiver of
 
 *1088
 
 the lease provision. “The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right.”
 
 Leonardo v. State Farm Fire & Cas. Co.,
 
 675 So.2d 176, 179 (Fla. 4th DCA 1996). “[T]he waiving party must possess all of the material facts for its representations to constitute a waiver.”
 
 L.R. v. Dep’t of Children & Families,
 
 822 So.2d 527, 530 (Fla. 4th DCA 2002). “[Contractual terms may be waived, both expressly and implicitly, by the party to whom the term benefits.”
 
 Hammond v. DSY Developers, LLC,
 
 951 So.2d 985, 988 (Fla. 3d DCA 2007).
 

 Eremian’s affidavit set forth all of the elements of waiver. The lease contained a provision giving the landlord the right to be named as an additional insured on the tenant’s insurance policy, thus providing the right and the actual notice of the right. Eremian’s sworn affidavit states that he and the property manager, Ginsburg, agreed that the landlord need not be added as an additional insured until the renewal of the insurance policy, an intentional relinquishment of that right.
 

 In opposition the landlord looks to the “anti-waiver” provision of the policy. However, that particular waiver provision appears not to prevent the application of the waiver in this case. Section 17.3 of the lease states:
 

 WAIVER: The waiver of Landlord of any breach of any term, condition, or covenant herein contained shall not be a waiver of such term, condition, covenant, or any subsequent breach of the same or any other term, condition, or covenant herein contained.
 

 This provision applies when a breach of a condition or term occurs, and the landlord does not exercise his rights upon breach under the lease. It prevents the assertion of the defense where the landlord may declare a default based upon a subsequent breach of'the same condition. This is not the same type of anti-waiver clause as was found in
 
 Rybovich Boat Works, Inc. v. Atkins,
 
 587 So.2d 519 (Fla. 4th DCA 1991), which prohibited any waiver of contract terms
 
 unless in writing.
 
 The waiver provision in this case contains no such prohibition.
 

 More applicable to these facts is section 22.02 of the lease which prohibits oral agreements to modify its terms. That provision states:
 

 This lease and the exhibits and riders, if any, attached hereto and forming a part hereof set forth all the covenants, promises, agreements, conditions, and understandings between the Landlord and the Tenant concerning the Leased Premises and there are no covenants, promises, conditions, or understandings, either oral or written, between them other than as herein set forth. Except as herein otherwise provided, no subsequent alteration, change, or addition to this Lease shall be binding upon the Landlord or Tenant unless reduced to writing and signed by them.
 

 The agreement of the tenant and Ginsburg not to comply with the insurance provision until policy renewal constitutes an oral understanding which is inconsistent with section 22.02.
 

 However, we have recently reaffirmed the principle that “under certain circumstances, written contracts can be modified by a subsequent oral agreement of the parties even though the written contract purports to prohibit such modification.”
 
 See Henley v. MacDonald,
 
 971 So.2d 998, 1001 (Fla. 4th DCA 2008)
 
 (quoting Wilson v. Woodward,
 
 602 So.2d 547, 549 (Fla. 2d DCA 1992)). Some circum
 
 *1089
 
 stances in which this principle has been applied include (1) where it would be a fraud on one party to refuse to perform the oral modification, or (2) where subsequent conduct of the parties indicates the acceptance of the oral modification.
 
 See Pan Am. Eng’g Co. v. Poncho’s Constr. Co.,
 
 387 So.2d 1052, 1053 (Fla. 5th DCA 1980). Either one of those factors might be proved from the facts set forth in Ere-mian’s affidavit and Ginsburg’s deposition. The issue, however, was not addressed in the trial court. Material issues of fact remain as to whether a waiver occurred and whether section 22.02 applies.
 

 For the foregoing reasons, we reverse the final summary judgment and remand for further proceedings.
 

 GROSS, C.J., and CIKLIN, J., concur.